**UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA**

| | |
|---|---|
| James W. Shaughnessy and Tracy Dunbrook, | Case No. 20-cv-709 (SRN/DTS) Case No. 20-cv-710 (SRN/DTS) |
| Plaintiffs, v. | **MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS** |
| Edward P. Southern, MD, | |
| Defendant. | |

## INTRODUCTION

Minnesota is the wrong forum for this lawsuit. Plaintiffs James W. Shaughnessy and Tracy Dunbrook are Connecticut citizens who live in Shanghai, China. Defendant Dr. Edward P. Southern ("Dr. Southern") is a Texas citizen and resident. Plaintiffs allege that Dr. Southern committed medical malpractice during a surgery he performed on Shaughnessy in Foshan, China. Dr. Southern's few contacts with Minnesota are not so continuous and systematic that he should reasonably anticipate being haled into court here. Therefore, the Court lacks personal jurisdiction over Dr. Southern. In addition, the doctrine of *forum non conveniens* applies because this lawsuit can more appropriately be conducted in a Chinese court. As a result, the Complaints should be dismissed without prejudice.

## BACKGROUND

**A.     The Parties.**

Plaintiff James W. Shaughnessy and Tracy Dunbrook are both attorneys who currently live and work in Shanghai, China. (*See* June 25, 2020 Declaration of John Pavelko ("Pavelko Decl.") Ex. A.)[1] Shaughnessy and Dunbrook are Connecticut citizens. (Compl. ¶ 5.) According to his LinkedIn page, Shaughnessy is the general counsel for Praxair Asia, Inc. (Pavelko Decl. Ex. A.) Praxair transferred Shaughnessy to Shanghai in April 2014. (Compl. ¶ 7.)

Dr. Southern is an orthopedic surgeon who lives in Galveston, Texas. (June 25, 2020 Declaration of Edward P. Southern, MD ("Southern Decl.") ¶ 19.) Dr. Southern works at the University of Texas Medical Branch Galveston Department Orthopedic Surgery and Rehabilitation. (*Id.*) From 2013 to 2018, Dr. Southern practiced medicine in Shanghai, China for Parkway Pantai Healthcare China ("Parkway") and the Institute for Western Surgery. (*Id.* ¶ 9.)

**B.     Dr. Southern Performed Back Surgery on Shaughnessy in China.**

On January 7, 2016, Shaughnessy presented to Dr. Southern at Parkway in Shanghai with complaints of chronic back and leg pain. (Southern Decl. ¶ 10.) On or about March 18, 2016, Dr. Southern performed a back surgery on Shaughnessy at the Foshan Chancheng Medical Center ("Foshan Medical Center") in Foshan, China. (Compl. ¶ 9.) All of Shaughnessy's post-operative follow-up treatment was at Parkway

---

[1] The Court may consider evidence outside of the Complaint when determining whether personal jurisdiction exists. *See Pederson v. Frost*, 951 F.3d 977, 979 (8th Cir. 2020).

in Shanghai. (Southern Decl. ¶ 10.) From January 7, 2016 through May 9, 2016, Dr. Southern treated Shaughnessy only in Shanghai or Foshan. (*Id.*) Dr. Southern never met with Shaughnessy or Dunbrook in Minnesota or anywhere else outside of China. (*Id.*)

C.  **Shaughnessy Filed and Withdrew a Lawsuit Against Dr. Southern in China.**

In May and July 2017, an attorney for Shaughnessy sent Parkway demand letters relating to the surgery Dr. Southern performed on Shaughnessy. (Southern Decl. ¶ 11.) Parkway rejected the demand letters because the surgery had been performed at the Foshan Medical Center. (*Id.*) On July 27, 2018, an attorney in the legal department for Parkway advised Dr. Southern that Shaughnessy had filed a lawsuit against Parkway and the Foshan Medical Center in the Shanghai Pudong Court relating to the surgery he performed on Shaughnessy. (*Id.* ¶ 12.) On December 5, 2018, Shaughnessy withdrew the lawsuit in Shanghai. (Southern Decl. Ex. A.)

D.  **Shaughnessy Filed a Lawsuit in the District of Connecticut, which was Dismissed for Lack of Personal Jurisdiction.**

On June 5, 2018, while their lawsuit in China was still pending, Shaughnessy and Dunbrook filed a complaint in United States District Court for the District of Connecticut which alleged that Dr. Southern committed medical malpractice during Shaughnessy's surgery and treatment in China. (Southern Decl. Ex. B.) Dr. Southern moved to dismiss the Complaint for lack of personal jurisdiction. On April 30, 2019, the District of Connecticut granted Dr. Southern's motion and dismissed the complaint against Dr. Southern for lack of personal jurisdiction. (*Id.* Ex. C.)

### E. The Complaints.

On March 11, 2020, Shaughnessy and Dunbrook filed separate *pro se* lawsuits in the District of Minnesota. Plaintiffs served Dr. Southern with the Complaints on June 4, 2020. (Docket No. 5.) That same day, Chief Judge Tunheim reassigned the related Complaints to this Court. (Docket No. 4.) The Complaints allege that Dr. Southern committed medical malpractice during the surgery and treatment of Shaughnessy in China. (Compl. ¶¶ 7-9.)

### F. Dr. Southern's Contacts with Minnesota are Limited.

Dr. Southern graduated from Baylor College of Medicine in Houston, Texas on May 27, 1988. (Southern Decl. ¶ 2.) After graduation, Dr. Southern completed an internship in the General Surgery Department at the Baylor College of Medicine. (*Id.* ¶ 3.) From 1989 to 1991, Dr. Southern completed a research fellowship and residency at the Yale University School of Medicine. (*Id.*) Dr. Southern was licensed to practice medicine in Connecticut from September 20, 1991 through January 31, 1993. (*Id.*) He was also a clinical instructor in orthopedic surgery at Yale from July 1994 to June 1995. (*Id.*) Dr. Southern performed his spine surgery fellowship at Rush University in Chicago from August 1995 to July 1996. (*Id.*)

In 1996, Dr. Southern moved to Wisconsin and practiced and taught medicine at the Medical College of Wisconsin. (Southern Decl. ¶ 4.) In 1999, Dr. Southern moved to California and entered private practice. (*Id.* ¶ 5.)

From 2002 until 2007, Dr. Southern lived and worked in Minnesota. (Southern Decl. ¶ 6.) In 2003, Dr. Southern and his wife bought property in Deephaven, Minnesota,

which they still own today. (*Id.*) Although his primary residence was Minnesota from 2002 to 2007, Dr. Southern was an active duty military member during this time and served overseas in Iraq and Germany. (*Id.*) Dr. Southern also practiced medicine in California during this time. (*Id.*) The last time Dr. Southern practiced medicine in Minnesota was in 2012 for a short time when he worked for a locum tenens company and was assigned to work in Minnesota. (*Id.* ¶ 7.)

From 2007 until 2012, Dr. Southern lived and practiced medicine in Michigan and taught at Michigan State University. (Southern Decl. ¶ 7.) In August 2012, Dr. Southern traveled to China for the first time to work in Guangdong Province and Shanghai, China. (*Id.* ¶ 8.) Dr. Southern returned to the United States to work as an associate professor at Louisiana State University in New Orleans. (*Id.*)

In August 2013, Dr. Southern moved to Shanghai, China to work full time as a medical doctor for Parkway Pantai Healthcare China ("Parkway") and the Institute for Western Surgery. (Southern Decl. ¶ 9.)

In 2015, Dr. Southern formed a Minnesota limited liability company called BioLogikal L.L.C. (Southern Decl. ¶ 6.) This company was intended to be a consulting company unaffiliated with Dr. Southern's medical practice. (*Id.*) However, the company never materialized and Dr. Southern did not renew its business license in 2018. (*Id.*) The company is currently inactive. (*Id.*) Dr. Southern does not maintain an office or bank account in Minnesota, does not have any agents or employees in Minnesota, and does not maintain any business presence in Minnesota. (*Id.*)

In January 2018, Dr. Southern returned to the United States to interview for a job at the University of Texas Medical Branch. (Southern Decl. ¶ 14.) Due to a hiring freeze, Dr. Southern's job offer for that position was postponed. (*Id.*) Instead, Dr. Southern accepted a job offer at the Eglin Air Force Base in Florida. (*Id.*)

In June 2018, Dr. Southern returned to the United States and worked briefly at the Ludington Hospital in Michigan while awaiting his assignment in Florida. (Southern Decl. ¶¶ 15-16.) On or about July 4, 2018, Dr. Southern flew back to China to pack his belongings. (*Id.* ¶ 16.) On July 16, 2018, Dr. Southern flew back from China to Los Angeles, California where he stayed with one of his daughters. (*Id.* ¶ 17.) Dr. Southern spent approximately three weeks of the summer of 2018 in Minnesota before he drove to Texas to spend time with his family. (*Id.* ¶ 18.) In early September 2018, Dr. Southern moved to Florida and started working at the Eglin Air Force Base. (*Id.*)

In 2019, Dr. Southern moved back to Texas to work at the University of Texas Medical Branch Galveston Department Orthopedic Surgery and Rehabilitation. (Southern Decl. ¶ 19.) Dr. Southern currently lives in Galveston, Texas. (*Id.*)

During his career, Dr. Southern has trained, practiced, or taught medicine in California, Colorado, Connecticut, China, Florida, France, Germany, Illinois, Iraq, Japan, Kentucky, Korea, Louisiana, Michigan, Minnesota, New York, Oklahoma, Singapore, Texas, Vermont, and Wisconsin. (Southern Decl. ¶ 20.) Dr. Southern has an active medical license in California, Colorado, Michigan, Minnesota, Oklahoma, Texas, Vermont, and Wisconsin. (*Id.*) Dr. Southern has an inactive medical license in Connecticut, Illinois, Louisiana, and New York. (*Id.*)

# ARGUMENT

## I. THE COURT LACKS PERSONAL JURISDICTION OVER DR. SOUTHERN.

### A. Legal Standard.

It is a plaintiff's burden to demonstrate, "by a prima facie showing, that personal jurisdiction exists." *Stevens v. Redwing,* 146 F.3d 538, 543 (8th Cir. 1998). The Court can exercise personal jurisdiction over a nonresident defendant if Minnesota's long-arm statute is satisfied and the exercise of personal jurisdiction does not offend due process. *Stanton v. St. Jude Med., Inc.,* 340 F.3d 690, 693 (8th Cir. 2003). Because Minnesota's long-arm statute extends the personal jurisdiction of Minnesota courts as far as due process allows, *In re Minn. Asbestos Litig.,* 552 N.W.2d 242, 246 (Minn. 1996), the Court need only evaluate whether the exercise of personal jurisdiction comports with the requirements of due process. *Guinness Import Co. v. Mark VII Distribs., Inc.,* 153 F.3d 607, 614 (8th Cir. 1998).

Due process requires that the defendant have "certain minimum contacts" with the forum state "such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *Int'l Shoe Co. v. Washington,* 326 U.S. 310, 316 (1945). Underlying this standard is the conviction that "those who live or operate primarily outside a State have a . . . right not to be subjected to judgment in its courts as a general matter." *J. McIntyre Mach., Ltd. v. Nicastro*, 564 U.S. 873, 881 (2011). Sufficient minimum contacts exist when the "defendant's conduct and connection with the forum State are such that he should reasonably anticipate being haled into court

there." *World–Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980). Accordingly, there must be some act by which the defendant "purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *Hanson v. Denckla*, 357 U.S. 235, 253 (1958). In contrast, contacts that are merely random, fortuitous, attenuated, or that are the result of unilateral activity of another party or a third person will not support personal jurisdiction. *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 475 (1985).

To determine the sufficiency of a defendant's contacts with the forum state, the Court examines five factors: (1) the nature and quality of the contacts; (2) the quantity of the contacts; (3) the relation between the contacts and the action; (4) the forum state's interest in the litigation; and (5) the convenience of the parties. *Epps v. Stewart Info. Servs. Corp.,* 327 F.3d 642, 648 (8th Cir. 2003). "The first three factors are closely related and are of primary importance, while the last two factors are secondary." *Pecoraro v. Sky Ranch for Boys, Inc.*, 340 F.3d 558, 562 (8th Cir. 2003).

### B. General and Specific Jurisdiction.

The third factor distinguishes between general and specific jurisdiction. *Wessels, Arnold & Henderson v. Nat'l Med. Waste, Inc.,* 65 F.3d 1427, 1432 (8th Cir. 1995). General jurisdiction is present whenever a defendant's contacts with the forum state are so "continuous and systematic" that the defendant may be sued in the forum over any controversy, independent of whether the cause of action has any relationship to the defendant's activities within the state. *Helicopteros Nacionales de Columbia, S.A. v. Hall,* 466 U.S. 408, 416 (1984). Specific jurisdiction refers to jurisdiction over causes of

action arising from or related to the defendant's actions within the forum state. *Burger King,* 471 U.S. at 472–73.

      **C.**    **Specific Jurisdiction Does Not Exist in this Case.**

Plaintiffs allege that Dr. Southern was negligent during the surgery and treatment of Shaughnessy in China. (Compl. ¶¶ 7-9.) Because all the care and treatment at issue occurred in China, this cause of action does not arise from or relate to Dr. Southern's contacts with Minnesota. As a result, the Court lacks specific jurisdiction over Dr. Southern. *See Ford v. Mentor Worldwide, LLC*, 2 F. Supp. 3d 898, 908 (E.D. La. 2014) (Louisiana court lacked specific jurisdiction over Florida physician who performed surgery on Louisiana patient in Florida); *Harlow v. Children's Hosp.*, 432 F.3d 50, 64 (1st Cir. 2005) (Maine court lacked specific jurisdiction over Massachusetts hospital that performed surgery of Maine patient in Massachusetts); *Gallant v. Trustees of Columbia Univ. in City of New York*, 111 F. Supp. 2d 638, 643 (E.D. Pa. 2000) ("The weight of authority holds that when treatment is rendered outside the forum state, a nonresident medical provider cannot be subject to specific jurisdiction.").

      **D.**    **Dr. Southern's Limited Minnesota Contacts Do Not Establish General Jurisdiction.**

Only "a limited set of affiliations with a forum will render a defendant amenable to [general] jurisdiction there." *Daimler AG v. Bauman*, 134 S. Ct. 746, 760 (2014). For an individual, the paradigm forum for the exercise of general jurisdiction is the individual's domicile. *Id.*; *see also NexGen HBM, Inc. v. ListReports*, Inc., 2017 WL 4040808, at *8 (D. Minn. Sept. 12, 2017) (Nelson, J.).

Dr. Southern lives, works, and is domiciled in Texas. (Southern Decl. ¶ 19.) Dr. Southern has not practiced medicine in Minnesota for more than seven years and only occasionally visits Minnesota. (Southern Decl. ¶ 6.) Dr. Southern does not have any agents or employees in Minnesota, or maintain an office, telephone number, or bank account in Minnesota. (*Id.*) Dr. Southern's contacts with Minnesota are limited to owning property in Deephaven, Minnesota, holding a Minnesota medical license, and forming a Minnesota limited liability company, which is now inactive. (Southern Decl. ¶ 6.) Such tenuous contacts are not enough for the Court to exercise general jurisdiction over Dr. Southern.

First, this Court has previously held that owning property in Minnesota is not sufficient to establish general personal jurisdiction. *See StoreWorks Techs., Ltd. v. Aurus, Inc.*, 2020 WL 336025, at *8 (D. Minn. Jan. 21, 2020) (Nelson, J.) ("The Court further finds that Aurus' Minnesota data center, while storing data for two Minnesota-based clients, is insufficient to establish either "continuous" or "systematic" contact to the point of rendering Aurus "at home" in Minnesota."); *see also Doe 318 v. Conventual Franciscans*, 2016 WL 6434084, at *6 (D. Minn. Oct. 28, 2016) (Frank, J.) (finding a lack of general personal jurisdiction even though defendant owned one property in Minnesota).

Second, courts throughout the country have held that maintaining a medical license in a state does not subject a physician to general personal jurisdiction in that state. *See Gallegos v. Frezza*, 357 P.3d 408, 417 (N.M. Ct. App. 2015); *Estate of Hicks ex rel. Hicks v. Wallack*, 2012 WL 2254170, at *10 (S.D. Ala. May 2, 2012), *report and*

*recommendation adopted*, 2012 WL 2254172 (S.D. Ala. June 14, 2012); *Colson v. Samson Hair Restoration, LLC*, 837 F. Supp. 2d 564, 570 (D.S.C. 2011); *Etchebarne-Bourdin v. Radice*, 982 A.2d 752, 759 (D.C. Ct. App. 2009); *Jafarzadeh v. Feisee*, 776 A.2d 1, 3 (Md. Ct. App. 2001); *Lebkuecher v. Loquasto*, 389 A.2d 143, 145 (Pa. 1978).

Third, Dr. Southern's formation of and membership in BioLogikal—which is inactive—does not subject him to general jurisdiction in Minnesota. Jurisdiction over an employee or officer does not automatically follow from jurisdiction over the corporation which employs him. *See Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 781 n.13 (1984); *Arkansas Rice Growers Co-op. Ass'n v. Alchemy Indus., Inc.*, 797 F.2d 565, 574 (8th Cir. 1986).

### E. The Remaining Factors Do Not Support Personal Jurisdiction.

Finally, Minnesota does not have any interest in litigation between a Texas physician who performed a surgery on a Connecticut patient in China. *See O'Grady v. Johnson*, 2006 WL 2403579, at *7 (D. Minn. Aug. 18, 2006), *aff'd*, 282 F. App'x 496 (8th Cir. 2008) (finding that Minnesota has no interest in providing a forum for litigation brought by a non-resident plaintiff). Minnesota is also an inconvenient forum for the Parties because Dr. Southern lives in Texas, Plaintiffs live in Shanghai, and other witnesses and documents are in China. *Am. Sols. for Bus. v. Fatburger N. Am., Inc.*, 2008 WL 11350011, at *5 (D. Minn. June 3, 2008) (finding that the convenience-of-the-parties factor indicated a lack of personal jurisdiction in Minnesota when all the parties to a contract were in California). As a result, the secondary factors also indicate that the Court lacks personal jurisdiction over Dr. Southern.

## II. THE COURT SHOULD DISMISS THE COMPLAINT ON THE GROUND OF *FORUM NON CONVENIENS*.

Generally, dismissal on the ground of *forum non conveniens* "has been substantially eliminated" by the federal transfer of venue statutes. *Bacon v. Liberty Mut. Ins. Co.*, 575 F.3d 781, 783 (8th Cir. 2009). But the *forum non conveniens* doctrine has continuing application "where the alternative forum is abroad." *Sinochem Int'l Co. v. Malaysia Int'l Shipping Corp.*, 549 U.S. 422, 430 (2007). Under the doctrine of *forum non conveniens*, federal district courts have inherent power to resist the imposition of jurisdiction even where authorized by statute "if the litigation can more appropriately be conducted in a foreign tribunal." *De Melo v. Lederle Lab.*, 801 F.2d 1058, 1060 (8th Cir. 1986).

Courts must conduct two distinct inquiries in determining whether to dismiss a case on the ground of forum non conveniens. First, the Court must consider whether "there exists an adequate alternative forum for the litigation." *De Melo*, 801 F.2d at 1061. The test for adequacy is "simply whether a party will have *some* remedy and will not be treated unfairly." *Polanco v. H.B. Fuller Co.*, 941 F. Supp. 1512, 1525 (D. Minn. 1996) (dismissing case on *forum non conveniens* grounds even though Guatemalan tort remedy was not "equivalent" to Minnesota tort remedy, and plaintiff would struggle to find a local attorney who could represent her).

Second, the Court must "balance the private interest factors, which affect the convenience of the litigants, and the public interest factors, which affect the convenience of the forum" and determine whether the "balance of factors" favors litigating the dispute

in the United States. *De Melo*, 801 F.2d at 1062. The "private interest factors" include the "practical problems that make" discovery and trial "easy, expeditious and inexpensive," such as the location of key witnesses and evidence, and the defendant's ability to implead necessary third parties. *Id.* The "public interest factors," by contrast, include broader considerations, like "the local interest in having localized controversies decided at home," and "the avoidance of unnecessary problems in conflict of laws, or in the application of foreign law." *Id.* at 1063.

> **A.     China is an Adequate Alternative Forum for this Litigation.**

An adequate alternative forum exists for this litigation—China. Courts throughout the country have found that Chinese courts provide an adequate alternative forum. *See Jiangsu Hongyuan Pharm. Co. v. DI Glob. Logistics Inc.*, 159 F. Supp. 3d 1316, 1332 (S.D. Fla. 2016); *Warner Tech. & Inv. Corp. v. Hou*, 2014 WL 7409978, at *4 (D. N.J. Dec. 31, 2014); *Jiali Tang v. Synutra Int'l, Inc.*, 656 F.3d 242, 251 (4th Cir. 2011); *CYBERsitter, LLC v. People's Republic of China*, 2010 WL 4909958, at *5 (C.D. Cal. Nov. 18, 2010); *Nai-Chao v. Boeing Co.*, 555 F. Supp. 9, 17 (N.D. Cal. 1982). Indeed, Plaintiffs already sought the benefit of a Chinese court, only to voluntarily dismiss the action. (*See* Southern Decl. Ex A; *see also Veljkovic v. Radisson Hosp., Inc.*, 2019 WL 1367772, at *6 (D. Minn. Mar. 26, 2019) (Nelson, J.) (finding Serbia to be an adequate alternative forum despite corruption because plaintiffs had previously sought relief in Serbian legal system). Accordingly, China is an adequate alternative forum for this litigation.

### B. The Private Interest Factors Favor Dismissal.

The private interest factors strongly favor dismissal because Dr. Southern performed the surgery in China and most of the relevant evidence, witnesses, and information regarding the surgery and treatment of Shaughnessy are in China. Gathering evidence and subpoenaing witnesses in China would be far from easy, expeditious, and inexpensive. Moreover, Dr. Southern's employers for the treatment at issue are in China and they have indicated that they will only insure him for lawsuits brought in China. (Southern Decl. ¶ 12.) Therefore, Dr. Southern would be prejudiced by an inability to receive insurance from his employer and he may be unable to implead one or more of those entities. *See De Melo*, 801 F.2d at 1063 (noting that a "private interest [factor] strongly favoring dismissal is [defendant's] inability to implead potential third-party defendants in domestic litigation," even though defendant could (in theory) "maintain a suit for indemnity or contribution against potential third-party defendants" in a foreign country).

### C. The Public Interest Factors Favor Dismissal.

The public interest factors also strongly favor dismissal. Not only would this case require this Court to learn and apply Chinese law but, considering the emphasis on localized controversies being resolved locally, China has a paramount and unique interest in adjudicating Plaintiffs' claims. Moreover, neither Plaintiff has any connection to Minnesota and none of the underlying facts of this case relate to the United States in any way. The central issue in this case will be whether Dr. Southern was negligent in his care and treatment of Shaughnessy under Chinese law. As a result, the Court and the jury

would have to examine Chinese medical malpractice law. Neither the Court, nor the citizens of Minnesota should be burdened with such a task. Accordingly, both the private and public interest factors favor dismissal to allow this case to be brought in a Chinese court.

## CONCLUSION

Dr. Southern does not have sufficient minimum contacts to Minnesota for the Court to exercise personal jurisdiction over him. In addition, the Complaint should be dismissed on the ground of *forum non conveniens* so that the case may be heard in the appropriate forum—China. The Court should grant Defendant's Motion to Dismiss and dismiss the Complaint without prejudice.

Dated: June 25, 2020

*s/ John Pavelko*
Gregory E. Karpenko (#0286473)
John Pavelko (#0398495)
**FREDRIKSON & BYRON, P.A.**
200 South Sixth Street, Suite 4000
Minneapolis, MN 55402-1425
Telephone: 612.492.7000
*gkarpenko@fredlaw.com*
*jpavelko@fredlaw.com*

**Attorneys for Defendant**