UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| James W. Shaughnessy and Tracy Dunbrook,<br><br>            Plaintiffs,<br>v.<br><br>Edward P. Southern, MD,<br><br>            Defendant. | Case No. 20-cv-709 (SRN/DTS)<br>Case No. 20-cv-710 (SRN/DTS)<br><br>**REPLY MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS** |

## INTRODUCTION

Dr. Southern's domicile is Texas. Plaintiffs claim to now live in Singapore. The allegedly negligent medical care was performed in China. Taken together, these facts make clear that this dispute does not belong in Minnesota.

## ARGUMENT

**I.     THE COURT SHOULD DISMISS THE COMPLAINTS FOR LACK OF PERSONAL JURISDICTION.**

   **A.     Plaintiffs Conflate Subject Matter Jurisdiction and Personal Jurisdiction.**

Dr. Southern first moves to dismiss the Complaints for lack of personal jurisdiction. Plaintiffs counter that "by virtue of diversity jurisdiction (28 USC 1332(a)(1)), the Minnesota Federal Court has personal jurisdiction over Defendant." (Pls.' Opp'n Mem. ¶ 1; *see also* ¶¶ 4, 19, 33.)

Plaintiffs fundamentally misunderstand federal jurisdiction.[1]  The issue before the Court is not whether the Court has <u>subject matter</u> jurisdiction based on diversity of citizenship, but whether Dr. Southern has sufficient minimum contacts with Minnesota for the Court to exercise <u>personal</u> jurisdiction over Dr. Southern.  *Compare* 28 U.S.C. § 1332 *with Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945).  Accordingly, the Court should disregard Plaintiffs' arguments regarding subject matter jurisdiction.

> **B.    The Court Lacks Specific and General Jurisdiction over Dr. Southern.**

Personal jurisdiction is classified in two ways: specific and general.  *See Wessels, Arnold & Henderson v. Nat'l Med. Waste, Inc.*, 65 F.3d 1427, 1432 (8th Cir. 1995).  Plaintiffs do not dispute that the Court lacks specific jurisdiction over Dr. Southern because the allegedly negligent medical care was performed in China.  (*See e.g.*, Pls.' Opp'n Mem. ¶¶ 6, 11, and 12.)  Instead, Plaintiffs' sole counterargument is that general jurisdiction exists because Dr. Southern's domicile is Minnesota.  Plaintiffs are incorrect.

> **1.    Dr. Southern's Domicile is Texas.**

"For an individual, the paradigm forum for the exercise of general jurisdiction is the individual's domicile." *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 924 (2011).  Domicile "is established by physical presence in a place in connection with a certain state of mind concerning one's intent to remain there." *Mississippi Band of*

---

[1] Although Plaintiffs appear *pro se*, Plaintiffs are licensed attorneys and Courts in this District "have declined to extend 'less stringent standards and liberal construction' to *pro se* attorneys." *Ming'ate v. Bank of Am., N.A.*, 2011 WL 4590431, at *1, n.2 (D. Minn. Sept. 30, 2011) (Montgomery, J.); *see also Garcia v. Bank of Am., N.A*, 2014 WL 5685518, at *1, n.2 (D. Minn. Feb. 5, 2014) (Brisbois, J.).

*Choctaw Indians v. Holyfield*, 490 U.S. 30, 48 (1989); *see also Eckerberg v. Inter-State Studio & Publ'g Co.*, 860 F.3d 1079, 1085 (8th Cir. 2017).  A person can have only one domicile at a time.  *Aly v. Hanzada for Imp. & Exp. Co., LTD*, 864 F.3d 844, 848 (8th Cir. 2017).[2]

Dr. Southern is an associate professor at the University of Texas Medical Branch Galveston Department of Orthopedic Surgery and Rehabilitation in League City and Galveston, Texas.  (Case No. 20-cv-709 Docket No. 11 ¶ 19.)  Dr. Southern currently lives in Galveston, Texas.  (*Id.*)  Dr. Southern is registered to vote in Texas.  (July 28, 2020 Declaration of Edward P. Southern ("2d Southern Decl.") ¶ 3.)  Dr. Southern is an active member of the Texas Orthopedic Society.  (*Id.*)  Dr. Southern was personally served with the Summonses and Complaints in Texas.  (Case No. 20-cv-709 Docket No. 5, Case No. 20-cv-710 Docket No. 5.)  Dr. Southern's car is registered and insured in Texas.  (2d Southern Decl. ¶ 3.)  Dr. Southern has had a Texas bank account since the 1980s.  (*Id.*)  Dr. Southern attends church in Texas.  (*Id.*)  Dr. Southern is a member of UTMB Alumni Fieldhouse gym.  (*Id.*)  Dr. Southern receives mail at his home and office in Galveston, and still receives mail at his familial home in Cuero, Texas.  (*Id.* ¶ 2.)

Dr. Southern's family has owned property in Texas since the 1860s—which his mother still owns today.  (2d Southern Decl. ¶ 2.)  Dr. Southern comes from a military family who moved around often when he grew up.  (*Id.*)  Eventually, Dr. Southern's

---

[2] Plaintiffs erroneously cite to the Minnesota Administrative Rules for the standard on domicile.  (Pls.' Opp'n Mem. at 11-13.)  However, the standard for a person's domicile has been established by the Supreme Court of the United States.  *See Holyfield*, 490 U.S. at 48.  There is no need for the Court to review Minnesota Administrative Rules.

parents settled in Texas. (*Id.*) Dr. Southern received his undergraduate degree from Texas A&M University. (*Id.*) Dr. Southern moved back to Texas last year to be closer to his mother after his father passed away. (*Id.*) Dr. Southern has always considered Texas his home. (*Id.*) After a long career of traveling the world practicing medicine, Dr. Southern intends to live in Texas for the rest of his life. (*Id.*) Indeed, Dr. Southern's new employer provided him the option of two retirement benefits: a 403(b) plan or a pension plan. (*Id.*) The 403(b) plan is portable, but the pension plan requires Dr. Southern to remain a University employee until he retires. (*Id.*) Dr. Southern chose the pension plan. (*Id.*)

Simply put, Dr. Southern has established a strong physical presence in Texas and an intent to remain in Texas. As a result, Dr. Southern's domicile is Texas.

**2.    Dr. Southern's Domicile is not Minnesota.**

Contrary to Plaintiffs' position, Minnesota has not been an established domicile for Dr. Southern, and there is no presumption or burden on Dr. Southern to prove that he has changed his domicile from Minnesota. Although Dr. Southern still owns property in Minnesota, Dr. Southern gave up the homestead status of that property for tax purposes after he moved to China in 2013. (2d Southern Decl. ¶ 7.) Although Dr. Southern registered a business in Minnesota, he has let that business license expire and has no intention of renewing. (*Id.*) Moreover, the exhibits to Plaintiffs' declarations are inaccurate and lack credibility, as they appear to be screenshots of Whitepages.com searches and emails from process servers. The facts remain that Dr. Southern has an

established physical presence in Texas and intends to remain in Texas for the rest of his life.

Before establishing his domicile in Texas, Dr. Southern's domicile was Florida. (2d Southern Decl. ¶ 4.)  Dr. Southern lived, worked, and voted in Florida. (*Id.*)  Before Florida, Dr. Southern's domicile was China. (*Id.* ¶ 5.)  Dr. Southern lived, worked, and moved his family to China. (*Id.*)  Before China, Dr. Southern's domicile was Louisiana, where he lived and worked. (*Id.* ¶ 6.)  Before Louisiana, Dr. Southern's domicile was Michigan, where he lived and worked. (*Id.* ¶ 6.)  Dr. Southern was only domiciled in Minnesota from 2002 until 2007. (*Id.* ¶ 7.)  Dr. Southern's domicile has not been Minnesota since that time.

### 3. **Minnesota is a Disinterested and Inconvenient Forum.**

Plaintiffs argue that Minnesota is an interested and convenient forum because the Court has subject matter jurisdiction based on diversity and Dr. Southern is domiciled in Minnesota. (Pls.' Opp'n Mem. at 15-16.)  As discussed above, diversity jurisdiction is irrelevant here and Dr. Southern's domicile is Texas, not Minnesota.  Moreover, Minnesota does not have any interest in providing a forum for plaintiffs who live in Singapore against a defendant who is domiciled in Texas about a dispute that arose in China.  Minnesota would be an extremely inconvenient forum for all parties involved. Relevant documents and third-party witnesses remain in China and the Court would be required to interpret Chinese medical malpractice law.  There is no reason to force this case to be litigated in Minnesota.  Accordingly, the Court should dismiss the Complaints for lack of personal jurisdiction.

## II. THE COURT SHOULD DISMISS THE COMPLAINTS ON THE GROUND OF *FORUM NON-CONVENIENS.*

### A. China Remains an Adequate Alternative Forum.

Dr. Southern also moves the Court to dismiss the Complaints on the ground of *forum non-conveniens*. Plaintiffs argue that China is not an adequate alternative forum because the Chinese court dismissed Plaintiffs' claims in China for lack of jurisdiction after Dr. Southern left China to move back to the United States. (Pl.'s Opp'n Mem. at 17.) This argument is meritless for several reasons.

Plaintiffs claim that their attorney informed them that the Chinese court dismissed Dr. Southern for lack of jurisdiction because he left China. (*See* Case No. 20-cv-709 Docket No. 16 ¶ 8 and Case No. 20-cv-709 Docket No. 17 ¶ 10.) The transcript of the Chinese court hearing, however, proves that Plaintiffs <u>voluntarily</u> dismissed Dr. Southern. (Case No. 20-cv-709 Docket No. 11-1 Ex. A.) Moreover, Plaintiffs' position is inconsistent with Chinese law, which provides that Chinese courts can have jurisdiction over non-residents. (China R. Civ. P. Ch. 24, Art. 265; *see* July 29, 2020 Declaration of John Pavelko ("2d Pavelko Decl.") Ex. A.) Finally, the timing of the filing of Plaintiffs' Complaint in the District of Connecticut discredits Plaintiffs' argument about dismissal of the Chinese action. Plaintiffs signed their Complaints in Connecticut in May 2018, while Dr. Southern was still living and working in China—and while the Chinese case was still ongoing. (*See* Case No. 20-cv-709 Docket No. 11-1 Exs. A-B.) This fact undermines Plaintiffs' position and demonstrates that these lawsuits in the United States are nothing more than an attempt by Plaintiffs to increase Dr.

Southern's litigation costs while Plaintiffs bring *pro se* lawsuits against him throughout the country. Accordingly, the Court should find that China is an adequate alternative forum.

### B. Plaintiffs Misunderstand the Private Interest Factors.

Plaintiffs argue that the private interest factors support maintaining this lawsuit in Minnesota because federal courts "litigate matters that occur in foreign jurisdictions all of the time." (Pls.' Opp'n Mem. at 18.) But the private interest factors focus on the convenience of the litigants, not the forum's ability to handle the case. *De Melo*, 801 F.2d at 1062. Plaintiffs also cite to *United States v. Aluminum Co. of Am.*, 148 F.2d 416, 421 (2d Cir. 1945), but that case does not discuss the doctrine of *forum non-conveniens* or the private interest factors. Plaintiffs simply cannot hide from the facts that they live in Singapore, Dr. Southern lives in Texas, the surgery was performed in China, and all relevant documents and third-party witnesses remain in China. As a result, the private interest factors favor dismissal.

### C. Plaintiffs Misapply the Public Interest Factors.

Plaintiffs claim that Dr. Southern's "arguments over choice of law have no place in a Motion to Dismiss for Lack of Personal Jurisdiction." (Pls.' Opp'n Mem. at 19.) Plaintiffs are once again wrong. First, Dr. Southern's choice of law argument is not a part of his Motion to Dismiss for Lack of Personal Jurisdiction. Instead, Dr. Southern's choice of law argument is relevant to his Motion to Dismiss on the Ground of *Forum Non-Conveniens*. Second, in ruling on a motion to dismiss on the ground of *forum non-conveniens*, the Court looks at the public interest factors which include considerations

like "the avoidance of unnecessary problems in conflict of laws, or in the application of foreign law." *De Melo*, 801 F.2d at 1063.  Here, the Court would have to apply Chinese medical malpractice law.  Such an onerous task favors dismissal.

Plaintiffs also claim that the "public interest of US citizen employers who are transferred overseas by US employers in our increasingly global economy deserve the protection of the Federal Court System when they are injured in the country of their temporary residence."  (Pl.'s Opp'n Mem. at 20.)  But that is not the type of "public interest" that is contemplated under the doctrine of *forum non-conveniens*.  Instead, the public interest factors consider "the local interest in having localized controversies decided at home."  *De Melo*, 801 F.2d at 1063.  In this case, an allegedly negligent surgery performed in China should be resolved in a Chinese court.

## CONCLUSION

The Court lacks personal jurisdiction over Dr. Southern.  The doctrine of *forum non-conveniens* also applies here.  Accordingly, the Court should grant Defendant's Motion and dismiss the Complaints without prejudice.

Dated:  July 29, 2020

*s/ John Pavelko*
Gregory E. Karpenko (#0286473)
John Pavelko (#0398495)
**FREDRIKSON & BYRON, P.A.**
200 South Sixth Street, Suite 4000
Minneapolis, MN  55402-1425
Telephone:  612.492.7000
*gkarpenko@fredlaw.com*
*jpavelko@fredlaw.com*

**Attorneys for Defendant**